IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| DOUGLAS C. MARTINSON, II, as the administrator of the estate of Christopher Bishop, <br><br> Plaintiff <br><br> v. <br><br> SOUTHERN HEALTH PARTNERS, INC., et al., <br><br> Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) )  CASE NO. 5:21-cv-1144-HNJ <br><br> **JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT**

### Introduction

1. This is an action alleging violations by defendants of the constitutional right of Christopher Bishop to basic medical care while he was incarcerated in the Madison County Jail. Defendants refused to treat Bishop's overdose. As a result, Bishop died.

### Parties

2. Douglas C. Martinson, II is the duly-appointed administrator of the estate of Christopher Bishop.

3. Defendant Southern Health Partners, Inc. (SHP) is a private for-profit corporation that is under a contractual obligation to provide medical care for inmates

in the Madison County Jail.

4. Defendant Sara Connell (LPN) was employed by SHP at the Madison County Jail as a nurse.

5. Defendant Crystal Cottrell (LPN) was employed by SHP at the Madison County Jail as a nurse.

6. Defendant Nioca Manley (LPN) was employed by SHP at the Madison County Jail as a nurse.

7. Defendant Sonya Moore (LPN) was employed by SHP at the Madison County Jail as a nurse.

8. Defendant Tayana Millwood (RN) was employed by SHP at the Madison County Jail as a nurse.

9. Defendant Kyna Speak (RN) was employed by SHP at the Madison County Jail as a nurse.

10. Defendant Dustin Vickers (LPN) was employed by SHP at the Madison County Jail as a nurse.

11. Defendant Felicia Deshields was employed at the Madison County Jail as a corrections officer.

12. Defendant Joshua Boyd was employed at the Madison County Jail as a corrections officer.

13. Defendant Nicholas Wallace was employed at the Madison County Jail as a corrections officer.

14. Defendant Matthew Hill was employed at the Madison County Jail as a corrections officer.

15. Defendant Terry Barlowe was employed at the Madison County Jail as a corrections officer.

16. Defendant Mark Martin was employed at the Madison County Jail as a corrections officer.

17. Defendant William Oliver was employed at the Madison County Jail as a corrections officer.

18. Chrystal Adams was employed at the Madison County Jail as a corrections officer.

19. Plaintiff sues each of the individual defendants in his or her individual capacity.

20. Each of the individual defendants acted under color of law and within the scope of his or her employment when engaging in the misconduct described herein.

**Facts**

21. Christopher Bishop was arrested on or about August 21, 2019, at around 4:00 p.m.

22. Shortly before he was arrested, Bishop ingested a large quantity of methamphetamine.

23. During intake, Bishop disclosed this fact to a corrections officer, who documented it on the appropriate form by circling "yes" to the question regarding recent ingestion of "dangerous levels of drugs and/or alcohol."

24. This form was received by the intake nurse, defendant Connell.

25. Bishop also disclosed to Connell his recent ingestion of a dangerously large quantity of methamphetamine when he was seen by her at approximately 8:00 p.m.

26. Defendant Connell was aware, from her training and experience as a correctional nurse, that, due to the risk of death, a person who has ingested a large quantity of meth requires evaluation and treatment at a hospital even without accompanying signs and symptoms.

27. Acting with deliberate indifference and contrary to the applicable nursing standard of care, defendant Connell did not send Bishop to the hospital or otherwise take appropriate action.

28. Bishop was seen by defendant Moore at approximately 2:00 a.m. on August 22, 2019.

29. Defendant Moore learned from Bishop's records and from Bishop that

Bishop had ingested a dangerously large quantity of methamphetamine.

30. Defendant Moore also learned that Bishop was exhibiting signs and symptoms of an overdose.

31. Primarily, defendant Moore observed that Bishop was having difficulty breathing, had a rapid heart and respiration rate, was not steady on his feet, had slurred speech, was confused, was extremely drowsy, and was so slow to respond to questions and stimuli that he appeared to be on the verge of losing consciousness.

32. Defendant Moore was aware, from her training and experience as a correctional nurse, that, due to the risk of death, a person who has ingested a large quantity of meth requires evaluation and treatment at a hospital even without accompanying signs and symptoms.

33. Nevertheless, acting with deliberate indifference and contrary to the applicable nursing standard of care, defendant Moore did not send Bishop to the hospital or otherwise take appropriate action.

34. At approximately 7:30 a.m., Bishop was seen by defendant Manley.

35. Defendant Manley learned that Bishop had ingested a dangerously large quantity of methamphetamine from Bishop's records.

36. Defendant Manley also learned that Bishop was exhibiting signs and symptoms of an overdose.

37. Specifically, defendant Manley observed that Bishop was not responsive.

38. Defendant Manley was unable to get Bishop to respond.

39. Defendant Manley treated Bishop's inability to respond as a refusal of medical treatment.

40. Defendant Manley did not even attempt to get vital signs from Bishop.

41. Defendant Manley was aware, from her training and experience as a correctional nurse, that, due to the risk of death, a person who has ingested a large quantity of meth requires evaluation and treatment at a hospital even without accompanying signs and symptoms.

42. Acting with deliberate indifference and contrary to the applicable nursing standard of care, defendant Manley did not send Bishop to the hospital or otherwise take appropriate action.

43. Over the course of the day, other nursing staff members, including defendants Cottrell, Millwood, Speak, and Vickers, though speaking with defendant Manley and with correctional staff, became aware of Bishop's history of ingesting a dangerously large quantity of meth and a lack of responsiveness.

44. These defendants were aware, from their training and experience as correctional nurses, that, due to the risk of death, a person who has ingested a large quantity of meth requires evaluation and treatment at a hospital even without

accompanying signs and symptoms.

45. Nevertheless, acting with deliberate indifference and contrary to the applicable nursing standard of care, these defendants did not send Bishop to the hospital or otherwise take appropriate action.

46. In addition to the nursing staff, on the morning of August 22, corrections officers became aware of Bishop's history of ingesting a large quantity of meth and a lack of responsiveness.

47. These defendants became aware from communications with the nursing staff and with each other and from observing Bishop.

48. These defendants, including defendants Deshields, Boyd, Wallace, Hill, Barlowe, Martin, Oliver, and Adams, acting with deliberate indifference, did not send Bishop to the hospital or otherwise take appropriate action despite Bishop's obvious need for treatment.

49. These defendants were aware, from their training and experience as a correctional officers, that, due to the risk of death, a person who has ingested a large quantity of meth requires evaluation and treatment at a hospital even without accompanying signs and symptoms.

50. As a result of the conduct of defendants, Bishop drowned in his own vomit and died in his cell.

51. Bishop was found cold and dead in his cell in the afternoon.

52. The failure to send Bishop to the hospital despite his obvious need for emergency medical treatment was the direct cause of Bishop's death.

53. Had Bishop been sent to the hospital, his overdose was easily treatable.

54. Despite knowing the severity of Bishop's condition, acting with deliberate indifference, all of the individual defendants, unidentified SHP nurses, and unidentified corrections officers let Bishop suffer and die.

55. All of the individual defendants acted with intent to violate plaintiff's constitutional rights or with reckless disregard for those rights, justifying punitive damages.

### Count I - § 1983 - Fourteenth Amendment - Deliberate Indifference to Serious Medical Needs - Against the Individual Defendants Only[1]

56. As explained above, each of the individual defendants was deliberately indifferent to plaintiff's serious medical needs in violation of the Fourteenth Amendment to the United States Constitution.

---

[1] Under current law, non-governmental healthcare entities like SHP are liable only for policies and customs that cause constitutional violations rather than pursuant to general agency principles and are not subject to punitive damages under § 1983. Plaintiff reserves the right to seek a change in the law regarding these matters on appeal. Plaintiff also seeks a change in the law regarding whether individual officer defendants can assert a qualified immunity defense and the standards under which that defense is applied.

57. As a result of the conduct of defendants, Bishop suffered injuries and damages.

### Count II - Medical Negligence Against
### SHP, Defendant Nurses, and Unidentified SHP Personnel

58. As explained above, on August 21-22, 2019, the SHP defendants and other unidentified SHP providers failed to meet the standard of care for similarly-situated healthcare providers regarding Bishop's care and condition, including failing to properly assess and treat Bishop's condition and failing to promptly send Bishop to the hospital.

59. Each of these failures directly led to Bishop's death.

60. SHP and its nurses, aids, physicians, and other care providers, including the named defendants, acted as employees or agents of SHP and acted in the line and scope of their employment or agency and/or for the benefit of SHP. Therefore, SHP is liable under agency principles.

61. A reasonably prudent healthcare provider, operating under the same or similar conditions, would not have failed to provide the care listed above. Each of the foregoing acts and patterns of negligence on the part of these defendants, operating separately or in combination with other defendants jointly and cumulatively, proximately contributed to cause Bishop's suffering death.

### Other Matters

62. All conditions precedent to the bringing of this suit have occurred.

## Relief Sought

63. As relief, plaintiff seeks the following:

    a. That plaintiff be awarded such compensatory damages as a jury shall determine from the evidence plaintiff is entitled to recover;

    b. That plaintiff be awarded against all defendants sued in their individual capacities and SHP such punitive damages as a jury shall determine from the evidence plaintiff is entitled to recover (pursuant to Alabama and federal law);

    c. That plaintiff be awarded prejudgment and postjudgment interest at the highest rates allowed by law;

    d. That plaintiff be awarded the costs of this action, plaintiff's reasonable attorney's fees, and plaintiff's reasonable expert witness fees;

    e. Appropriate declaratory and injunctive relief; and

    f. That plaintiff be awarded such other and further relief to which plaintiff is justly entitled.

**Dated: October 22, 2021**

Respectfully submitted,

s/ Henry F. Sherrod III
Henry F. (Hank) Sherrod III
No. ASB-1200-D63H
HENRY F. SHERROD III, P.C.
119 South Court Street
Florence, AL 35630
Telephone: (256) 764-4141
Facsimile: (877) 864-0802
Email: hank@alcivilrights.com

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

    I hereby certify that on October 22, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

    s/ Henry F. (Hank) Sherrod III