UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

**DOUGLAS C. MARTINSON, II,** *as administrator of the estate of Christopher Bishop*,

    **Plaintiff,**

v.

**SOUTHERN HEALTH PARTNERS, INC.,** *et al.*,

    **Defendants.**

Case No.: 5:21-cv-01144-MHH

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on two motions for summary judgment. (Docs. 41, 42). Plaintiff Douglas C. Martinson, II, the administrator of the estate of Christopher Bishop, filed this lawsuit after Mr. Bishop died while he was in the custody of the Madison County Jail. (Doc. 17-1).[1] Mr. Martinson names as defendants Southern Health Partners, Inc., the corporation that provides medical care for inmates at the Madison County Jail; nurses Sara Connell, Crystal Cottrell, Nioca Manley, Sonya Moore, Tanya Millwood, Kyna Speake, and Dustin Vickers; correctional officers Felicia DeShields, Nicholas Wallace, Terry Barlowe, Mark

---

[1] For background concerning this case, please see Doc. 32.

Martin, and Chrystal Adams; and Deputy Sheriff William Oliver. (Doc. 17-1).[2] Mr. Martinson alleges a claim for deliberate indifference to serious medical needs against the nurses and correctional officers, and he alleges a claim under the Alabama Medical Liability Act against Southern Health Partners and the individual nurses. (Doc. 17-1, pp. 8–9, ¶¶ 56–61).

The correctional officers and Deputy Oliver have filed a motion for summary judgment on Mr. Martinson's Eighth Amendment deliberate indifference claim. (Doc. 43). Southern Health Partners and the nurses have filed a motion for summary judgment on Mr. Martinson's deliberate indifference claim and have asked the Court to decline to exercise jurisdiction over Mr. Martinson's state law claim. (Doc. 44). Mr. Martinson has stated that he "does not oppose the granting of these motions." (Doc. 47).[3]

---

[2] Crystal Cottrell's legal name is now Crystal Wood. (Doc. 41-4, p. 2, ¶ 2). Ms. Connell's legal name now is Sara Crabtree. (Doc. 41-4, p. 1, ¶ 2).

Mr. Martinson also named Josh Boyd and Matthew Hill as defendants, but these defendants have not been served. (*See* Docs. 21, 22). Therefore, the Court dismisses Mr. Martinson's claims against Mr. Boyd and Mr. Hill without prejudice. *See* FED. R. CIV. P. 4(m).

[3] The parties' summary judgment briefing pre-dates the Eleventh Circuit's *en banc* decision in *Wade v. McDade*, 106 F.4th 1251 (11th Cir. 2024) (*en banc*). In that decision, the Eleventh Circuit clarified the standard for establishing an Eighth Amendment deliberate-indifference claim. The briefing and record in this matter are not at odds with *Wade*'s deliberate-indifference standard. *See Wade*, 106 F.4th at 1262.

The standard for reviewing unopposed summary judgment motions is well-established:

> Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) (emphasis added). Thus, the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion. *See Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir.1988) (per curiam). The district court need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials. *See id.* At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment.

*U.S. v. One Piece of Real Prop. Located at 5800 SW 74th Ave.*, 363 F.3d 1099, 1101–02 (11th Cir. 2004). A district court order granting an unopposed motion for summary judgment "must 'indicate that the merits of the motion were addressed.'" *One Piece of Real Prop.*, 363 F.3d at 1102 (quoting *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir. 1988)).

*Deliberate Indifference*

To establish deliberate indifference in this case, Mr. Martinson would have to prove that Mr. Bishop had an "objectively serious medical need," meaning "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" and "one that, if left unattended, poses a substantial risk of serious harm." *Hoffer v.*

3

*Fla. Dep't of Corrs.*, 973 F.3d 1263, 1270 (11th Cir. 2020) (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).  Next, Mr. Martinson would have to prove that that prison officials acted with deliberate indifference to that serious medical need.  *Hoffer*, 973 F.3d at 1270 (quoting *Harper v. Lawrence Cty.*, 592 F.3d 1227, 1234 (11th Cir. 2010)).  A prison official acts with deliberate indifference if he "(1) had subjective knowledge of a risk of serious harm; (2) disregard[s] that risk; and (3) act[s] with more than gross negligence."  *Hoffer*, 973 F.3d at 1270 (quoting *Harper*, 592 F.3d at 1234).

The nurses and correctional officers argue that Mr. Bishop did not have an objectively serious medical need that could have been observed before Mr. Bishop became unresponsive and received medical attention.  (Docs. 43, pp. 4–10; 44, pp. 11–19).  The record demonstrates that during his intake process, Mr. Bishop reported that:

> (1) he had a serious medical condition or contagious disease that [might] require medical attention; (2) he was [] taking a prescription medication that [might] need to be continued; (3) he had a serious mental health condition that [might] require attention; (4) he [was] [] taking or been prescribed a medication for emotional problems; (5) he ha[d] been hospitalized for emotional problems within the last year; (6) he recently [had] ingested dangerous levels of drugs and/or alcohol that [might] put him at risk for overdose or withdrawal; and (7) that in the past he had suffered from DT's or other serious withdrawal symptoms from drugs or alcohol.

(Doc. 40-1, pp. 3–4, 6) (internal quotations omitted).  Despite these answers, Mr. Bishop appeared to be alert, appropriately responded to the questions asked, and did

4

not exhibit signs or symptoms of drug or alcohol overdose. (Doc. 40-1, p. 4, ¶ 5); (Doc. 41-2, pp. 3, 10). LPN Connell placed Mr. Bishop on a detox protocol, and Mr. Bishop went to Housing Unit One. (Docs. 41-2, pp. 3, 9, ¶ 8; 41-3, p. 4, ¶ 4).

Defendant Manley worked as a nurse on Housing One and oversaw "pill call." (Doc. 41-3, p. 2, ¶ 3). During pill call, she administered prescribed medications to inmates. (Doc. 41-3 p. 2, ¶ 3). On August 22, 2019, she completed a "Refusal of Medical Treatment and Release of Responsibility" form for Mr. Bishop because he failed to participate in pill call after being called twice. (Doc. 41-3, p. 2, ¶ 4). Nurse Manley does not see inmates unless they participate in pill call. (Doc. 41-3, p. 3, ¶ 6). Therefore, she did not see or examine Mr. Bishop during pill call on August 22, 2019, and she was not aware that Mr. Bishop was experiencing an overdose until she received a call on her radio. (Doc. 41-3, pp. 5–6, ¶¶ 11–12).[4]

Officer Deshields monitored inmates' movements within Housing Unit One from the Control Room and communicated with the inmates through the intercom system. (Doc. 40-6, p. 3, ¶ 3).[5] Officer Deshields did not observe Mr. Bishop

---

[4] Mr. Bishop's medication administration record indicates that he received a dose of thiamine at 7:30 AM on August 22, 2019. (Doc. 41-3, p. 12). In her affidavit, Nurse Manley explained that the note is incorrect because, if she had seen Mr. Bishop that day, she would have taken and entered his vital signs. (Doc. 41-3, pp. 3–4, ¶ 8). Mr. Bishop's vital signs do not appear in the medical records. (Doc. 41-3, pp. 11–13). Nurse Manley notes that entries in the medication administration record for 7:30 AM indicate that Mr. Bishop was a "no show" for pill call. (Doc. 41-3, p. 4, ¶ 8).

[5] The intercom was a two-way system that allowed inmates to talk with the control room officer. (Doc. 40-6, p. 3, ¶ 3). Mr. Bishop did not attempt to contact the control room. (Doc. 40-6, pp. 3–5, ¶¶ 2–8).

5

engaging in abnormal or unusual behavior while Mr. Bishop was in the housing unit. (Doc. 40-6, pp. 3–4, ¶¶ 5–6). She was not aware that Mr. Bishop had ingested meth or alcohol prior to arriving at the jail. (Doc. 40-6, pp. 4–5, ¶ 8).

Nurses Cottrell, Vickers, Speake, and Millwood did not interact with Mr. Bishop before each received a radio call on August 22, 2019, for assistance because Mr. Bishop was unresponsive. (Docs. 41-4, pp. 2–4, 6; 41-5, pp. 2–4, 6; 41-6, pp. 2–4; 41-7, pp. 2–4). These defendants were not aware that Mr. Bishop had ingested methamphetamine before he arrived at the jail. (Docs. 41-4, p. 4, ¶ 8; 41-5, p. 4, ¶ 8; 41-6, p. 4, ¶ 8; 41-7, pp. 3–4, ¶ 7). Similarly, correctional officers Wallace, Barlowe, Martin, and Adams did not interact with Mr. Bishop before they received a radio alert and reported to assist Mr. Bishop, (Docs. 40-8, pp. 3–4, ¶¶ 2–5; 40-9, pp. 3–4, ¶¶ 2–5; 40-10, pp. 3–4, ¶¶ 2–5; 40-11, pp. 3–4, ¶¶ 3–5), and the officers did not know that Mr. Bishop had ingested meth. (Docs. 40-8, pp. 3–4, ¶¶ 2–5; 40-9, pp. 3–4, ¶¶ 2–5; 40-10, pp. 3–4, ¶¶ 2–5; 40-11, pp. 3–4, ¶¶ 3–5). Deputy Oliver was dispatched only to help transfer Mr. Bishop from the jail to the hospital—he was not a corrections officer. (Doc. 40-12, p. 3, ¶¶ 3–5).

Viewed in the light most favorable to Mr. Martinson, the record does not contain evidence that indicates that one or more of the defendants knew that Mr. Bishop had a serious medical need. Mr. Bishop told LPN Connell during his intake screening that he had used meth and alcohol before he arrived at the jail, but LPN

Connell observed that Mr. Bishop was alert, oriented, and had appropriate effect. (Doc. 41-2, p. 3). None of the other defendants interacted with Mr. Bishop before he became nonresponsive.

Because the undisputed evidence demonstrates that none of the defendants had notice that Mr. Bishop's drug and alcohol use before he arrived at the jail caused a serious medical need, Mr. Martinson's deliberate indifference claim fails as a matter of law.

### *Alabama Medical Liability Act*

Because the Court will enter judgment for the defendants on Mr. Martinson's federal law claim for deliberate indifference to Mr. Bishop's medical needs, the Court elects not to exercise supplemental jurisdiction over Mr. Martinson's state-law claim. When a federal district court has original jurisdiction over an action, the district court may exercise supplemental jurisdiction over state-law claims related to the federal-law claims, 28 U.S.C. § 1367(a). A district court may elect not to exercise supplemental jurisdiction over state-law claims if the court "has dismissed all claims over which it has jurisdiction." 28 U.S.C. § 1367(c)(3). In deciding whether to exercise supplemental jurisdiction, courts may consider "judicial economy, convenience, fairness to the parties, and whether all the claims would be tried together." *Estate of Amergi ex rel. Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1366–67 (11th Cir. 2010) (quoting *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d

1559, 1569 (11th Cir. 1994)).  The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial."  *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004).

Here, judicial economy, convenience, and fairness weigh in favor of dismissing Mr. Martinson's remaining AMLA claim, particularly given his indication that he does not oppose the motion for summary judgment.  (Doc. 47).[6]  Therefore, the Court dismisses Mr. Martinson's AMLA claim.

Based on the foregoing, the Court grants the defendants' motions for summary judgment on Mr. Martinson's deliberate indifference claim and dismisses his AMLA claim.  The Clerk shall please TERM Docs. 41 and 42 and close this case.

**DONE** and **ORDERED** this March 27, 2025.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[6] For information regarding tolling of the limitations period for Mr. Martinson's AMLA claim, please see 28 U.S.C. § 1367(d).